AMERICAN FOREIGN SERVICE ASSOCIATION ET AL.
v. GARFINKEL, DIRECTOR, INFORMATION
SECURITY OVERSIGHT OFFICE, ET AL.

No. 87–2127.   Argued March 20, 1989—Decided April 18, 1989

*Patti A. Goldman* argued the cause for appellants. With her on the briefs were *Alan B. Morrison, Paul Alan Levy,* and *Susan Z. Holik.*

*Edwin S. Kneedler* argued the cause for appellees. With him on the brief were *Acting Solicitor General Bryson, Assistant Attorney General Bolton, Deputy Solicitor General Merrill, Barbara L. Herwig,* and *Freddi Lipstein.*\*

---

\*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union by *Kate Martin, Gary M. Stern, Steven R. Shapiro,* and *John A. Powell;* for the American Federation of Labor and Congress of Industrial Organizations et al. by *Robert M.Weinberg, Walter*

PER CURIAM.

As a condition of obtaining access to classified information, employees in the Executive Branch are required to sign "nondisclosure agreements" that detail the employees' obligation of confidentiality and provide for penalties in the event of unauthorized disclosure. Two such nondisclosure forms are at issue in this case. One, Standard Form 189, was devised by the Director of the Information Security Oversight Office (DISOO) (now appellee Garfinkel); the other, Form 4193, was created by the Director of Central Intelligence (DCI) (now appellee Webster). Both of these forms forbade employees to reveal classified *or* "classifiable" information to persons not authorized to receive such information, App. 15, 19, and made clear that employees who disclosed information in violation of these agreements could lose their security clearances, their jobs, or both. *Id.*, at 16, 21. Neither form defined the term "classifiable." The DISOO eventually promulgated a regulation that defined the term "classifiable" in Form 189 to include only unmarked classified information or unclassified information that was "in the process of a classification determination." Under this regulation, moreover, an employee would violate the nondisclosure agreement by disclosing unclassified information only if that employee "knows, or reasonably should know, that such information is in the process of a classification determination and requires interim protection." 52 Fed. Reg. 48367 (1987). For those employees who signed Form 4193, however, the DCI did not attempt to define "classifiable." More than half of the Federal Gov-

*Kamiat, Laurence Gold, George Kaufmann, Mark Roth,* and *Charles A. Hobbie;* and for the Government Accountability Project et al. by *Joseph B. Kennedy.*

Briefs of *amici curiae* were filed for the United States Senate by *Michael Davidson, Ken U. Benjamin, Jr.,* and *Morgan J. Frankel;* and for the Speaker and Leadership Group of the United States House of Representatives by *Steven R. Ross* and *Charles Tiefer.*

ernment's civilian and military employees have signed either
Form 189 or 4193.  Brief for Appellants 5.

Section 630 of the Continuing Resolution for Fiscal Year
1988, Pub. L. 100–202, 101 Stat. 1329–432, enacted by Congress in 1987, prohibited the expenditure of funds in fiscal
year 1988 for the implementation or enforcement of Form
189, Form 4193, or any other form that violated one of its
five subsections.*  In response to this statute, appellee Garfinkel ordered agencies to cease using Form 189, but several
agencies nevertheless required approximately 43,000 employees to sign the form after § 630 was enacted.  Brief for
Appellants 10.  The DCI, in contrast, continued to require
employees to sign Form 4193, but attached a paragraph to
the form stating that the nondisclosure agreement would

---

*Section 630 provides:

"No funds appropriated in this or any other Act for fiscal year 1988 may
be used to implement or enforce the agreements in Standard Forms 189
and 4193 of the Government or any other nondisclosure policy, form or
agreement if such policy, form or agreement:

"(1) concerns information other than that specifically marked as classified; or, unmarked but known by the employee to be classified; or, unclassified but known by the employee to be in the process of a classification
determination;

"(2) contains the term 'classifiable';

"(3) directly or indirectly obstructs, by requirement of prior written authorization, limitation of authorized disclosure, or otherwise, the right of
any individual to petition or communicate with Members of Congress in a
secure manner as provided by the rules and procedures of the Congress;

"(4) interferes with the right of the Congress to obtain executive branch
information in a secure manner as provided by the rules and procedures of
the Congress;

"(5) imposes any obligations or invokes any remedies inconsistent with
statutory law: *Provided*, That nothing in this section shall affect the enforcement of those aspects of such nondisclosure policy, form or agreement
that do not fall within subsections (1)–(5) of this section."

Section 630 applied only to fiscal year 1988; however, § 619 of the Treasury, Postal Service and General Government Appropriations Act, 1989,
Pub. L. 100–440, 102 Stat. 1756, includes restrictions on expenditures of
funds during fiscal year 1989 that are identical to those contained in § 630.

"be implemented and enforced in a manner consistent with" the statute of which § 630 was a part. App. 26–27. Three months after § 630 became law, the DCI replaced Form 4193 with Form 4355, which eliminated the term "classifiable." *National Federation of Federal Employees* v. *United States,* 688 F. Supp. 671, 680, n. 11 (DC 1988).

Appellant American Foreign Service Association (AFSA) and several Members of Congress brought the present lawsuit challenging appellees' use of Forms 189 and 4193 on the ground that they violated § 630. They sought declaratory and injunctive relief that would (1) bar appellees from requiring employees to execute or sign Form 4193 during fiscal year 1988; (2) compel appellees to treat any Form 4193 agreement signed after December 22, 1987 (the effective date of § 630), as void; and (3) direct appellees to notify all employees who signed Form 189 or 4193 after December 22, 1987, that these agreements were void and that the terms of such forms signed before that date could not be enforced in fiscal year 1988. App. 10. This lawsuit was consolidated with two other cases, brought by the National Federation of Federal Employees and the American Federation of Government Employees, which sought to enjoin the use of Forms 189 and 4193 because, among other things, they violated § 630 and because the term "classifiable" was so vague and overbroad that it inhibited employees' speech in violation of the First Amendment.

The District Court for the District of Columbia concluded that appellant AFSA had standing to challenge the nondisclosure forms on behalf of its members, but that the Members of Congress lacked standing to challenge the use of the forms. 688 F. Supp., at 678–682. The court then *assumed* that "the Executive's actions since enactment of section 630 do not comply with the requirements of that legislation," *id.,* at 683, and n. 16, because the DCI had continued to require employees to sign Form 4193 for three months after enactment of § 630 despite § 630's specific prohibition on the use of that

form. Acknowledging that, during that time, the DCI had added a paragraph to Form 4193 stating that the agreement would be enforced in a manner consistent with § 630, the District Court nevertheless concluded that this action was not "'true to the congressional mandate from which it derives authority,'" *id.*, at 683–684, n. 16, quoting *Farmers Union Central Exchange, Inc.* v. *FERC*, 236 U. S. App. D. C. 203, 217, 734 F. 2d 1486, 1500 (1984), and that review of the Executive's action under the Administrative Procedure Act, 5 U. S. C. § 706, "likely" would show that the Executive's action was contrary to law, 688 F. Supp., at 684, n. 16. Having thus skirted the statutory question whether the Executive Branch's implementation of Forms 189 and 4193 violated § 630, the court proceeded to address appellees' argument that the lawsuit should be dismissed because § 630 was an unconstitutional interference with the President's authority to protect the national security. Concluding that § 630 "impermissibly restricts the President's power to fulfill obligations imposed upon him by his express constitutional powers and the role of the Executive in foreign relations," *id.*, at 685, the court entered summary judgment in favor of appellees.

Appellants took a direct appeal from the District Court's judgment pursuant to 28 U. S. C. § 1252, and we noted probable jurisdiction, 488 U. S. 923 (1988). In spite of the importance of the constitutional question whether § 630 impermissibly intrudes upon the Executive's authority to regulate the disclosure of national security information—indeed, partly because of it—we remand this case to the District Court without expressing an opinion on that issue.

Events occurring since the District Court issued its ruling place this case in a light far different from the one in which that court considered it. Since issuing the decision that we now review, the District Court has ruled on the constitutional challenge presented by the cases with which the present one was consolidated, and has decided that the unadorned

term "classifiable" used in Forms 189 and 4193 is unconstitutionally vague. See *National Federation of Federal Employees* v. *United States*, 695 F. Supp. 1196, 1201–1203 (DC 1988). The court further held that the DISOO's definition of the term "classifiable," see *supra*, at 155, would remedy this vagueness, and ordered appellees to notify employees either that this definition was in force or that no penalties would be imposed for the disclosure of "classifiable" information. 695 F. Supp., at 1203–1204. Appellees thereafter deleted the word "classifiable"—a primary focus of appellants' challenge to Forms 189 and 4193—from all nondisclosure forms, and replaced it with the definition given in the DISOO's regulation. They also furnished individualized notice of this change to employees who signed either Form 189 or Form 4193. 53 Fed. Reg. 38278 (1988); Motion to Affirm 13. According to appellants, however, appellees have notified only current employees of the refinement of the term "classifiable"; former employees, who signed Form 189 or 4193 but have left the employment of the Federal Government, have not received such notice. Brief for Appellants 15. The controversy as it exists today is, in short, quite different from the one that the District Court considered.

Indeed, appellees urge us to hold the case moot to the extent that it challenges the use of the term "classifiable" in Forms 189 and 4193. Brief for Appellees 31–32. As to current employees who have been notified that the term "classifiable" no longer controls their disclosure of information, the controversy is indeed moot. Appellants emphasize, however, that former employees have not been informed of the switch in terminology; as to them, the controversy whether they should have received notice of this change remains alive. Brief for Appellants 20. We decline to decide the merits of appellants' request for individualized notice to these employees, however, because the questions whether individual notice is required by § 630 and whether appellants' complaint can be read to request such notice for *former* employees, see

Brief for Appellees 32, n. 24 (arguing that it cannot be so read), are questions best addressed in the first instance by the District Court.

A second reason why we remand this case for further proceedings rather than ordering it dismissed is that appellants argue that the definition of "classified information" now supplied by the DISOO, 53 Fed. Reg. 38279 (1988) (to be codified in 32 CFR § 2003.20(h)(3)), does not comply with § 630. They contend that the DISOO's definition prohibits disclosure of information that an employee reasonably should have known was classified, whereas subsection (1) of § 630 refers only to information that is "known by the employee" to be classified or in the process of being classified. Brief for Appellants 19–20. In contrast, appellees and the Senate as *amicus* argue that there is no inconsistency between § 630(1) and this new definition. Brief for Appellees 39–41; Brief for United States Senate as *Amicus Curiae* 17–18. It appears that, in order to press this issue, appellants would be forced to amend their complaint in order to take into account the new definition of the term "classified." Brief for Appellees 41. Because the decision whether to allow this amendment is one for the District Court, and because appellants' argument raises a question of statutory interpretation not touched upon by the District Court, we leave these matters for that court to decide in the first instance.

In addition, there remains a question whether the forms comply with subsections (3), (4), and (5) of § 630, dealing with disclosure of classified information to Congress. Both appellants and appellees apparently agree that these subsections simply preserve pre-existing rights, rights guaranteed by other statutes and constitutional provisions. Brief for Appellants 38–40; Brief for Appellees 48. The only relief appellants request with respect to this portion of the case is notice to employees informing them that Forms 189 and 4193 did not alter those pre-existing rights. Brief for Appellants 38. No actual instance in which an employee sought

to disclose information to Congress, and was prohibited from doing so, has been brought to our attention. There thus exists a substantial possibility that this last portion of the case is not ripe for decision, and this is exactly the argument pressed by several *amici*. Brief for American Civil Liberties Union as *Amicus Curiae* 28–48; Brief for Speaker and Leadership Group of House of Representatives as *Amicus Curiae* 12–16; Brief for United States Senate as *Amicus Curiae* 15–21. We are not, however, disposed to decide for ourselves whether this is so. Since the District Court analyzed the interaction between § 630 and the Executive Branch's nondisclosure policy only in abbreviated fashion, we do not have the benefit of a lower court's interpretation of the statute and of Executive policy to help us decide whether the case is ready for decision or, if it is, to guide our own resolution of the merits. Again, therefore, we return these questions to the District Court to allow it to sort them out in the first instance.

Because part of the controversy has become moot but other parts of it may retain vitality, we vacate the judgment below and remand for further proceedings consistent with this opinion. See, *e. g.*, *United States Dept. of Treasury* v. *Galioto*, 477 U. S. 556, 560 (1986); *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 39–40 (1950). In doing so, we emphasize that the District Court should not pronounce upon the relative constitutional authority of Congress and the Executive Branch unless it finds it imperative to do so. Particularly where, as here, a case implicates the fundamental relationship between the Branches, courts should be extremely careful not to issue unnecessary constitutional rulings. On remand, the District Court should decide first whether the controversy is sufficiently live and concrete to be adjudicated and whether it is an appropriate case for equitable relief, and then decide whether the statute and forms are susceptible of a reconciling interpretation; if they are not, the court may turn to the constitutional ques-

tion whether § 630 impermissibly intrudes upon the Executive Branch's authority over national security information. See, *e. g., Ashwander* v. *TVA,* 297 U. S. 288, 345–356 (1936) (Brandeis, J., concurring); *Rescue Army* v. *Municipal Court of Los Angeles,* 331 U. S. 549 (1947); *Clark* v. *Jeter,* 486 U. S. 456, 459 (1988).

The judgment of the District Court for the District of Columbia is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*