# Access to Classified Information

This memorandum provides an opinion on various legal questions posed by a panel appointed by the Director of Central Intelligence to make a recommendation on whether an official at the Department of State, Richard Nuccio, should be granted access to Sensitive Compartmented Information.

November 26, 1996

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
CENTRAL INTELLIGENCE AGENCY

This memorandum responds to your request for our opinion on various legal questions posed by a panel appointed by the Director of Central Intelligence to make a recommendation on whether an official at the Department of State, Richard Nuccio, should be granted access to Sensitive Compartmented Information ("SCI"). [1] The panel has stated that "[it is] not asking that OLC take any position on the facts presented by Mr. Nuccio in his statement." Panel Memorandum at 1. Accordingly, we limit our role to providing our opinion on only the specific legal questions presented, and make no attempt to apply our legal conclusions to the facts in this matter. Nor, of course, do we express any opinion on the ultimate question of whether Mr. Nuccio should retain his SCI security clearance.

We have organized the legal questions posed by the panel into three categories: (1) the application of executive branch rules and practices on disclosure of classified information to Members of Congress, in light of relevant congressional enactments; (2) the applicability of the Whistleblower Protection Act, 5 U.S.C. § 2302; and (3) the applicability of Executive Order 12674, 3 C.F.R. 215 (1990).

## 1. *Disclosure of Classified Information to Members of Congress*

Two questions posed by the panel address the relationship between, on the one hand, Executive Order 12356, *National Security Information*, 3 C.F.R. 166 (1983), which governs the handling of classified information in the executive branch, along with the applicable nondisclosure agreement signed by individuals having access to SCI information, and, on the other hand, two congressional enactments concerning the rights of federal employees to provide information to Congress. [2]

---

[1] *See* Letter for Richard L. Shiffrin, Deputy Assistant Attorney General, Office of Legal Counsel, from Michael J. O'Neil, General Counsel, Central Intelligence Agency (Nov. 13, 1996), enclosing Memorandum for Michael J. O'Neil from Kenneth W. Dam, John Podesta, and Terrence O'Donnell (Nov. 12, 1996) ("Panel Memorandum"). The Panel Memorandum attached a submission from Mr. Nuccio's attorney setting forth various legal positions. *See* Letter for Terrence O'Donnell, from Ronald W. Kleinman (Oct. 25, 1996), enclosing Statement of Richard A. Nuccio Submitted to the Review Panel in Response to Proposed Withdrawal of SCI Clearance ("Nuccio Statement"). The Panel Memorandum set forth questions (a) through (g) for us to address, but the panel subsequently withdrew questions (d) and (g).

[2] Question (c) asks that we address "5 U.S.C. § 7211 ('Lloyd La Follette Act') including the legitimacy of nondisclosure agreements for those having access to SCI information and the issues raised in *National Federation of Federal Employees v. U.S.*, 695 F. Supp. 1196 (D.D.C. 1988)." Panel Memorandum at 1. Question (f) asks

The congressional enactments identified by the panel are 5 U.S.C. § 7211 and the provision of the Treasury, Postal Service and General Government Appropriations Act, 1997, Pub. L. No. 104–208, 110 Stat. 3009–314 (1996), relating to classified information nondisclosure agreements, a version of which has been enacted annually since 1987. Section 7211, entitled *Employees' right to petition Congress*, provides (in its entirety) that "[t]he right of employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof, may not be interfered with or denied."

The current version of the nondisclosure agreements appropriations provision provides (in pertinent part) that:

> No funds appropriated in this or any other Act for fiscal year 1997 may be used to implement or enforce the agreements in Standard Forms 312 and 4355 of the Government or any other nondisclosure policy, form, or agreement if such policy, form, or agreement does not contain the following provisions: "These restrictions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by . . . section 7211 of title 5, United States Code (governing disclosures to Congress) . . . ."

Treasury, Postal Service and General Government Appropriations Act, 1997, § 625, 110 Stat. at 3009–359.[3]

### a. *Effect of Congressional Enactments*

The longstanding position of the executive branch concerning the relationship between, on the one hand, these congressional enactments and, on the other hand, Executive Order 12356 and the classified information nondisclosure agreements is set forth in the brief that the Acting Solicitor General submitted to the Supreme Court in 1989 in the litigation cited in question (c).[4] *See* Brief for the Appellees,

---

"[w]hether the annual provision of the Treasury, Postal Service and General Government Appropriations Act (for FY97, *see* Section 625) authorizes disclosure [of] another agency's classified information to a member of Congress notwithstanding Sections 4.1(d) of Executive order 12356 and 4.2(b) of Executive Order 12958." *Id.* at 2.

[3] We have not included in the quotation the provision's listing of the Whistleblower Protection Act because of our conclusion in section 2 of this opinion that the Whistleblower Protection Act is inapplicable in this situation.

[4] The litigation concerned the then-applicable appropriations provision addressed to the classified information nondisclosure agreements. As with the current version, the appropriations provision at issue in the litigation contained language implicitly referring to the right of government employees to petition Congress that is the subject of 5 U.S.C. § 7211:

> No funds appropriated . . . may be used to implement or enforce the agreements in Standard Forms 189 or 4193 of the Government or any other nondisclosure policy, form or agreement if such policy, form or agreement . . . (3) directly or indirectly obstructs, by requirement of prior written authorization, limita-

Continued

403

*American Foreign Serv. Ass'n v. Garfinkel*, 488 U.S. 923 (1988) (No. 87–2127) ("*AFSE* Brief").[5] We view that brief as the controlling statement of the views of the Department of Justice ("Department") on the issues presented by the panel's questions (c) and (f). Accordingly, we will cite to that brief in this opinion in the same manner as we would cite an opinion of this Office.

The Department's *AFSE* Brief stated our view that a congressional enactment would be unconstitutional if it were interpreted "to divest the President of his control over national security information in the Executive Branch by vesting lower-ranking personnel in that Branch with a 'right' to furnish such information to a Member of Congress without receiving official authorization to do so." *AFSE* Brief at 48; *see also id.* at 16–17. This position is based on the following separation of powers rationale:

> [T]he President's roles as Commander in Chief, head of the Executive Branch, and sole organ of the Nation in its external relations require that he have ultimate and unimpeded authority over the collection, retention and dissemination of intelligence and other national security information in the Executive Branch. There is no exception to this principle for those disseminations that would be made to Congress or its Members. In that context, as in all others, the decision whether to grant access to the information must be made by someone who is acting in an official capacity on behalf of the President and who is ultimately responsible, perhaps through intermediaries, to the President. The Constitution does not permit Congress to circumvent these orderly procedures and chain of command — and to erect an obstacle to the President's exercise of all executive powers relating to the Nation's security — by vesting lower-level employees in the Executive Branch with a supposed "right" to disclose national security information to Members of

---

tion of authorized disclosure, or otherwise, the right of any individual to petition or communicate with Members of Congress in a secure manner as provided by the rules and procedures of the Congress . . . . Treasury, Postal Service and General Appropriations Act, 1988, Pub. L. No. 100–202, § 630, 101 Stat. 1329–391, 1329–432 (1987). The difference between the current and former provisions is that the reference to section 7211 in the current version is explicit while the reference in the former version is implicit. We do not believe that this difference is meaningful for current purposes.

[5] The district court had held section 630 to be unconstitutional, concluding that it "impermissibl[y] restrict[ed] the President's power to fulfill obligations imposed upon him by his express constitutional powers and the role of the Executive in foreign relations." *National Fed'n of Fed. Employees v. United States*, 688 F. Supp. 671, 685 (D.D.C. 1988). On appeal, the Supreme Court concluded that the case had become partially moot and therefore vacated the district court judgment and remanded the case to the district court for further proceedings on the non-moot aspects of the case, including the dispute over subsection (3) of section 630. *See American Foreign Serv. Ass'n v. Garfinkel*, 490 U.S. 153, 160–61 (1989). In doing so, the Court "emphasize[d] that the District Court should not pronounce upon the relative constitutional authority of Congress and the Executive Branch unless it finds it imperative to do so." *Id.* at 161. On remand, the district court dismissed the amended complaint on statutory construction grounds, avoiding the constitutional issues. *See American Foreign Serv. Ass'n v. Garfinkel*, 732 F. Supp. 13 (D.D.C. 1990).

Congress (or anyone else) without the authorization of Executive Branch personnel who derive their authority from the President.

*Id.* at 42.

In light of this constitutional position, the Department did not interpret the congressional enactments at issue in the *AFSE* litigation as vesting in executive branch employees a right to provide classified information to Members of Congress without official authorization. *See id.* (appropriations provision does not confer such a right); *id.* at 50 n.43 (5 U.S.C. § 7211 "does not confer a right to furnish national security information to Congress."). Based on the same separation of powers analysis, we do not give such an interpretation to the currently applicable provisions. Accordingly, we conclude that the classified information nondisclosure agreements may validly be applied to a disclosure to a Member of Congress and that section 625 of the Treasury, Postal Service and General Government Appropriations Act does not authorize any disclosure to a Member of Congress that is not permitted under Executive Order 12356.[6]

## b. *Interpretation of Executive Order 12356*

We turn now to question (e), which concerns the interpretation of Executive Order 12356. We stress that this question also implicates issues of policy, practice and precedent with respect to which the panel may wish to consult others in the executive branch.

Question (e) asks "[w]hether Executive Order 12356 can be read to permit a cleared employee of the Executive Branch to disclose classified information to a cleared member of Congress based on the employee's determination of the member's need to know." Panel Memorandum at 2. The Department's brief in the *AFSE* litigation summarizes the executive branch framework — consisting of Executive Order 12356 and related directives and nondisclosure agreements — for the protection of classified information. *See generally, AFSE* Brief at 2–7. The first pertinent part of that framework is Executive Order 12356's two-part requirement of trustworthiness and "need to know":

> Executive Order No. 12,356 provides that access must be limited as a general matter to those individuals who have been determined to be trustworthy, and that access to any particular item of information may be granted only where it "is essential to the accomplish-

---

[6] The panel's question (f) also refers to the currently applicable classified information executive order, Executive Order 12958, 3 C.F.R. 333 (1996), but our discussion will refer only to Executive Order 12356, because that was the order applicable at the time of Mr. Nuccio's disclosure to a Member of Congress. In any event, we do not find the differences in wording between the two executive orders to be relevant for purposes of the questions posed by the panel.

ment of lawful and authorized Government purposes'' (§ 4.1(a)) —
*i.e.*, where the individual has a "need to know" that information.

*AFSE* Brief at 3. The brief notes that in addition to the provisions of Executive
Order 12356, reference should be made to the requirement imposed by the Direc-
tor of Central Intelligence, on the basis of his statutory authority to protect intel-
ligence sources and methods, that all individuals with access to SCI and other
Central Intelligence Agency information sign nondisclosure agreements *(see id.*
at 4–6) and to the governmentwide requirement, based on National Security Deci-
sion Directive 84, *Safeguarding National Security Information* (issued by President
Reagan on Mar. 11, 1983), that all individuals with access to classified information
(at any level) sign nondisclosure agreements *(see id.* at 6–7). We would add to
this listing the relevant directives issued by the Director of Central Intelligence.
*See, e.g.,* Director of Central Intelligence Directives 1/7, *Security Controls on the
Dissemination of Intelligence Information* (1987), and 1/19, *Security Policy for
Sensitive Compartmented Information* (1995).

Members of Congress, as constitutionally elected officers, do not receive secu-
rity clearances as such, but are instead presumed to be trustworthy. *See* Informa-
tion Security Oversight Office, *Classified Information Nondisclosure Agreement
(Standard Form 312) Briefing Booklet* ("ISOO Briefing Booklet") at 66. "Mem-
bers of Congress are not exempt, however, from fulfilling the 'need-to-know' re-
quirement." *Id.* Thus, the issue presented by question (e) is whether, under the
existing executive branch rules and practices, individual employees are free to
make a disclosure to Members of Congress based on their own determination on
the need-to-know question.

The answer to that question is most assuredly "no." The Department's brief
in the *AFSE* litigation stated that it would be unconstitutional for Congress to
"remov[e] decisionmaking about congressional access [to classified information]
from the usual channels in the Executive Branch and allow[ ] lower-ranking em-
ployees to decide for themselves whether to divulge such information to Congress
or its Members." *AFSE* Brief at 41–42. In making this statement, the Department
was obviously indicating that the existing regime under Executive Order 12356
did not afford individual employees such discretion. With respect to "dissemina-
tions that would be made to Congress or its Members . . ., the decision whether
to grant access to the information must be made by someone who is acting in
an official capacity on behalf of the President and who is ultimately responsible,
perhaps through intermediaries, to the President." *Id.* at 42. "Both the Executive
Branch and Congress have recognized that [disclosure of classified information]
must be conducted through the secure channels established by the Branches work-
ing in cooperation." *Id.* at 45.

Thus, the longstanding practice under Executive Order 12356 (and its successor)
has been that the "need to know" determination for disclosures of classified infor-

mation to Congress is made through established decisionmaking channels at each agency. We believe that it would be antithetical to the existing system for an agency to permit individual employees to decide unilaterally to disclose classified information to a Member of Congress — and we are unaware of any agency that does so.[7] In this regard, we suggest that the panel may wish to review what procedures were in place at the Department of State for such decisions at the time of Mr. Nuccio's disclosure of classified information to a Member of Congress.

## 2. *Whistleblower Protection Act*

The panel's question (b) asks whether denial or revocation of a SCI security clearance is a "personnel action" within the meaning of the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302. *See* Panel Memorandum at 1. A recent decision of the United States Court of Appeals for the Federal Circuit has settled this question. *See McCabe v. Department of the Air Force*, No. 94–3463, 1995 WL 469464 (Fed. Cir. 1995). Affirming a decision of the Merit Systems Protection Board, the Federal Circuit held in *McCabe* that the revocation of a security clearance is not a personnel action within the meaning of the WPA. The court's reasoning was as follows:

> Under *Egan v. Department of Navy*, 484 U.S. 518, 98 L. Ed. 2d 918, 108 S. Ct. 818 (1988), an agency's decision to grant or deny a security clearance is not judicially reviewable, except to the extent that an agency must follow any applicable procedures. "It should be obvious that no one has a 'right' to a security clearance. The grant of a clearance requires an affirmative act of discretion on the part of the granting official." *Egan*, 484 U.S. at 528. Given the high degree of discretion involved in matters of national security, we are convinced that Congress did not intend that agency decisions regarding security clearance status be encompassed within the definition of "personnel action" under the WPA.

*Id.* at **2. We believe that the Federal Circuit's decision was clearly a correct application of the Supreme Court's decision in *Egan*.[8]

---

[7] We do not doubt that some agencies may have in place procedures whereby very senior officials are vested with this authority. However, we understand question (e) to be inquiring about procedures with respect to the broad category of "cleared employees," not this much narrower category of very senior officials.

[8] In addition, even if revocation of a security clearance were to be viewed as a personnel action under the WPA, revoking a security clearance because of an unauthorized disclosure of classified information would not be a "prohibited personnel action" under the WPA. The WPA's prohibition against taking a personnel action because of a disclosure by an employee contains an express exception for disclosure of classified information. *See* 5 U.S.C. § 2302(b)(8)(A); *see also* ISOO Briefing Booklet at 72 ("The [classified information nondisclosure form] does not

Continued

Mr. Nuccio's attorney argues that "Congress expressed its intent that the definition of 'prohibited personnel practices' would include 'any personnel action against an employee who discloses information to Congress.'" Nuccio Statement at 7, quoting 5 U.S.C. § 2302(b). The Department rejected this argument in the *AFSE* litigation. After citing the express exception for disclosure of classified information contained in subsection 2302(b)(8)(A), *see supra* note 8, the Department noted that:

> by not including the exception for classified information in subsection 2302(b)(8)(B), which provides for disclosures to Inspectors General or the Office of Special Counsel of the Merit Systems Protection Board, Congress evidenced an intent to limit disclosures of classified information to particular Executive Branch officials with a designated need-to-know. Although Congress also stated in the whistleblower statute that "[t]his subsection shall not be construed to authorize the withholding of information from the Congress or the taking of any personnel action against an employee who discloses information to the Congress" (5 U.S.C. § 2302(b)), that provision does not confer an affirmative right to make such disclosures.

*AFSE* Brief at 50 n.43.

### 3. *Executive Order 12674*

The panel's question (a), *see* Panel Memorandum at 1, seeks our views on an argument that Mr. Nuccio's attorney makes in a footnote:

> Mr. Nuccio was acting consistently with the directives of the Office of the President as expressed and documented in Executive Order No. 123674 [sic], which require *every* federal employee to "disclose waste, fraud, abuse and corruption to appropriate officials [sic]." While the term "appropriate officials" is undefined in the Executive Order, there is no suggestion therein that it does not include members of Congress, and in particular members of oversight committees with direct interest in such abuse and corruption.

Nuccio Statement at 6 n.6.

The reference here is to section 101(k) of Executive Order 12674, *Principles of Ethical Conduct for Government Officers and Employees*, 3 C.F.R. 215, 215 (1990) as amended by Executive Order 12731, 3 C.F.R. 306, 307 (1991), which

conflict with the 'whistleblower' statute (5 U.S.C. § 2302). The statute does not protect employees who disclose classified information without authority.").

provides that "[e]mployees shall disclose waste, fraud, abuse, and corruption to appropriate authorities."[9] Mr. Nuccio's attorney correctly states that the term "appropriate authorities" is not defined in Executive Order 12674. We do not question that in certain circumstances that term could include a member of a congressional oversight committee. However, we believe — for the reasons set forth in the prior sections of this opinion — that the question of who is an "appropriate authority" to receive classified information is governed by Executive Order 12356 and the related directives and practices. Put another way, there should be no conflict in these circumstances between the ethical conduct executive order and the classified information executive order. The latter executive order should control because it more directly and specifically addresses the subject at issue, the disclosure of classified information.

CHRISTOPHER H. SCHROEDER
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[9] Mr. Nuccio's attorney employs the term "appropriate officials," but we will refer to the term actually used in the executive order: "appropriate authorities."