567 A.2d 741

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Petitioner,**

**v.**

**The Honorable Robert JUBELIRER, President Pro Tempore of the Senate, the Honorable D. Michael Fisher, Chairman of the Senate Environmental Resources and Energy Committee, the Senate of the Commonwealth of Pennsylvania et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1989.

Decided Dec. 7, 1989.

126

Keith E. Welks, Chief Counsel, with him, Richard P. Mather, Asst. Counsel, Dept. of Environmental Resources, Richard D. Spiegelman, Executive Deputy Gen. Counsel, Harrisburg, and Carl H. Shuman, Deputy Gen. Counsel, Office of General Counsel, Office of the Governor, for petitioner.

John P. Krill, Jr., with him, Linda J. Shorey, Ronald W. Chadwell, and R. Timothy Weston, Kirkpatrick & Lockhart, Harrisburg, for respondents, Robert Jubelirer, President Pro Tem. of The Senate, D. Michael Fisher, Chairman of the Senate Environmental Resources and Energy Committee, and The Senate of the Com. of Pa.

James L. Walsh, with him, Vincent C. DeLiberato, Harrisburg, for respondents, Gary D. Hoffman, Director of the Pennsylvania Code and Pennsylvania Bulletin, John Hartman, Director of the Legislative Reference Bureau, and The Legislative Reference Bureau.

S. David Fineman, Fineman & Bach, P.C., Philadelphia, with him, W.C. Matthews, III, Chief Counsel, Coatesville, Independent Regulatory Review Commission, for respondents, John R. McGinley, Jr., Chairman of the Independent Regulatory Review Commission, Commissioner Irvin G. Zimmerman, Commissioner Robert J. Harbison, III, Commissioner Mark Schwartz, Frank J. Ertz, Executive Director of the Independent Regulatory Review Commission, and the Independent Regulatory Review Commission.

Edwin L. Klett, with him, William A.K. Titelman, Christine L. Donohue and William H. Clark, Jr., Pittsburgh, Klett, Lieber, Rooney & Schorling, for amicus curiae, The House of Representatives of the Com. of Pa.

Henry G. Barr, Rhoads & Sinon, Harrisburg, for amicus curiae, Pennsylvania Chamber of Business and Industry.

Douglas Y. Christian, with him, Judith L. Rosenthal, Reed, Smith, Shaw & McClay, Philadelphia, and Stanley L. Arabis, Randor, for amicus curiae, Sun Company, Inc.

Before CRUMLISH, Jr., President Judge, and BARRY, COLINS, PALLADINO and SMITH, JJ.

## OPINION

CRUMLISH, Jr., President Judge.

The Pennsylvania Department of Environmental Resources (DER) has filed a petition for review, an application for special relief, and a motion for expedited consideration of the application for special relief addressed to this Court's original jurisdiction. DER asks this Court (1) to declare the Regulatory Review Act (Act), Act of June 25, 1982, P.L.

633, *as amended*, 71 P.S. §§ 745.1—745.15,[1] unconstitutional and (2) to direct the Legislative Reference Bureau to publish regulations adopted by the Environmental Quality Board (EQB), but disapproved by the Independent Regulatory Review Commission (IRRC) and by the Pennsylvania Senate when proposed for approval by the Governor.

This Court scheduled a hearing for September 7, 1989, on DER's application for special relief. On September 7, 1989, the parties entered into and presented to this Court a stipulation of counsel with a statement of stipulated facts (Stipulation) and a joint application for advancement of argument and argument en banc. We granted the joint application by Order of September 7, 1989, and scheduled en banc argument for October 4, 1989. We also denied DER's application for special relief on the basis that expedited disposition of the petition for review seeking declaratory relief would obviate the need for special relief.

On September 1, 1989, respondents Gary R. Hoffman, Director of the Pennsylvania Code and Pennsylvania Bulletin, John Hartman, Director of the Legislative Reference Bureau, and the Legislative Reference Bureau filed an answer to the petition for review and application for special relief. On September 8, 1989, respondents The Honorable Robert Jubelirer, President pro tempore of the Senate, The Honorable D. Michael Fisher, Chairman of the Senate Environmental Resources and Energy Committee, and the Senate of Pennsylvania filed answers with new matter. Respondents John R. McGinley, Jr., Chairman of the IRRC, Commissioner Irwin G. Zimmerman, Commissioner Robert J. Harbison, III, Commissioner Mark Schwartz, Frank J. Ertz, Executive Director of the IRRC, and the IRRC filed answers with new matter on September 11, 1989.

On October 4, 1989, this Court, sitting en banc, heard argument. Briefs and cross-motions for summary judg-

1. The Regulatory Review Act was reenacted and amended by the Regulatory Review Act, Act of June 30, 1989, Act No. 1989–19, P.L. ——. *See* Pa.Legis.Service No. 2 at 55–70. All references to the Regulatory Review Act are to the act prior to Act No. 1989–19. We shall refer to the new act as Act 1989–19.

ment have been filed by the parties. The Pennsylvania Chamber of Business and Industry, the Pennsylvania House of Representatives and Sun Company, Inc., have filed amicus curiae briefs opposing the relief sought by DER. DER has filed reply briefs.

## STATEMENT OF FACTS

According to the statement of stipulated facts filed by the parties, the EQB voted on July 9, 1988, to propose amendments to regulations codified at 25 Pa.Code Ch. 129 (relating to standards for sources of volatile organic compounds).[2] The EQB proposed the addition of volatility limitations as measured by Reid Vapor Pressure (RVP) applicable to all gasoline sold or exchanged in the Commonwealth beginning in the summer of 1990. The institution of these limitations is a part of the Commonwealth's continuing effort to reduce ozone levels in our environment and thereby promote the public health.

On October 5, 1988, the EQB submitted a copy of the proposed amendments to the IRRC, the Chairpersons of the Senate Environmental Resources and Energy Committee, the House Conservation Commission and the Legislative Reference Bureau. The proposed regulations were published at 18 Pa.B. 4666 on October 15, 1988. Neither the House nor the Senate took action on the proposed regulations by November 4, 1988, the deadline under the Act, because neither was in active session during the statutorily defined review period.

2. The EQB was created under Sections 201, 471, and 1920–A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §§ 62,180–1 and 510–20. Section 471, 71 P.S. § 180–1, was added by Section 14 of the Act of December 3, 1970, P.L. 834, *as amended;* Section 1920–A, 71 P.S. § 510–20, was added by Section 20 of the same act. The EQB has the power and duty to promulgate rules and regulations for the proper performance of the work of DER. EQB exercises the power to adopt rules and regulations previously vested in the Pennsylvania Department of Health and the Air Pollution Commission under the Air Pollution Control Act, Act of January 8, 1960, P.L. 2119 (1959), *as amended,* 35 P.S. §§ 4001—4015. *See* Sections 1920–A(c), 1901–A(16) and 1901–A(23) of The Administrative Code of 1929, 71 P.S. §§ 510–20(c), 510–1(16) and 510–1(23).

The IRRC disapproved the proposed regulations by its order of November 2, 1988. That order stated in part "[t]his order constitutes a bar to final publication of IRRC Regulation No. 7–172." (Stipulation, para. 20.) On December 1, 1988, DER returned the proposed regulations to the IRRC pursuant to Section 6(a) of the Act, 71 P.S. § 745.6(a), in original form with a letter submitted for the purpose of added justification. The IRRC once again disapproved the proposed regulations on December 7, 1988, and indicated that its order constituted a bar to final publication. On January 23, 1989, the Governor sent a report in support of the proposed regulations to the General Assembly pursuant to Section 7(b) of the Act, 71 P.S. § 745.7(b).

On February 1, 1989, the IRRC voted to continue its order of December 7, 1988, disapproving of the proposed regulations as resubmitted by DER on December 1, 1988, and as submitted for approval by the Governor to the General Assembly. In addition, pursuant to Section 7 of the Act, 71 P.S. § 745.7, the IRRC voted to transmit the proposed regulations to the General Assembly for consideration in accordance with the procedure set forth in the Reorganization Act of 1955.[3] The IRRC's order also stated that it constituted a bar to final publication.

On February 3, 1989, the IRRC transmitted the proposed regulations and its order of February 1, 1989, to the General Assembly. On March 15, 1989, the Senate Environmental Resources and Energy Committee held a public hearing on the proposed regulations in Harrisburg. On April 6, 1989, the House Conservation Committee held a public hearing on the proposed regulations in State College. After the Committee hearings, the Chairman of the Senate Environmental Resources and Energy Committee distributed to the full Senate a "Report and Recommendations on Regulatory Review Report No. 1–Proposed Gasoline Volatility Regulation." (Stipulation, para. 29.)

On April 12, 1989, the Senate voted to adopt Resolution B to Regulatory Review Report No. 1, disapproving the pro-

3. Act of April 7, 1955, P.L. 23, 71 P.S. §§ 750–1—750–12.

posed regulations. Mark R. Corrigan, Secretary of the Senate, by letter dated April 12, 1989, notified Arthur A. Davis, Secretary of DER, that the Senate had rejected the regulations. No action was taken on the proposed regulation by the House during the time period authorized under the Reorganization Act of 1955, as referenced in the Act.

On April 18, 1989, the EQB voted to adopt the final RVP regulations. The final regulations were transmitted to the Office of General Counsel for review pursuant to Section 301(10) of the Commonwealth Attorneys Act.[4] On April 28, 1989, the Office of General Counsel approved the final regulations for form and legality and then transmitted them to the Office of Attorney General. By letter dated May 3, 1989, the Attorney General advised the Office of General Counsel that pursuant to Section 204(b) of the Commonwealth Attorneys Act, 71 P.S. § 732–204(b), the Attorney General was disapproving the final regulations. (Stipulation, para. 34.)

On May 5 and May 11, 1989, DER advised EQB that it disagreed with the Attorney General's objections. However, DER recommended that EQB delete Section 129.73 of the regulations in order to respond to those objections. On May 16, 1989, EQB voted to rescind its order of April 18, 1989, adopting the final regulations, and EQB voted to adopt a new order approving a revised version of the final regulations, deleting Section 129.73. The Office of General Counsel resubmitted the revised final regulations to the Office of Attorney General by letter dated May 24, 1989.

By memorandum dated June 14, 1989, the Office of Attorney General advised the Office of General Counsel that the revised final regulations had been approved for form and legality. By separate letter dated June 14, 1989, the Attorney General advised Gary R. Hoffman that the Attorney General's approval of the regulations "should not be taken to mean that this office is approving publication of the regulations", and that the Attorney General reserved "judgment on whether the legislative action regarding this

4. Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. § 732–301(10).

regulation under the Regulatory Review Act precludes publication." (Stipulation, para. 38.)

The Office of General Counsel deposited the final regulations for filing and publication with Gary R. Hoffman and the Legislative Reference Bureau on August 22, 1989. On August 24, 1989, Hoffman informed DER that the Senate's disapproval of the regulations constituted a permanent bar to publication.

## ISSUE

This matter comes before us on cross-motions for summary judgment. There is no genuine issue of material fact, and the question before us is purely one of law. We must determine whether the Act violates the constitutional doctrine of separation of powers between and among the branches of this Commonwealth's government and whether the respondents' actions pursuant to that Act were lawful and constitutional.

## DISCUSSION

The General Assembly, in passing this Act, recognized an excessive promulgation of regulations without effective review of their cost benefits, duplication, inflationary impact and conformity to legislative intent. The Act's express language indicates that the General Assembly's purpose in creating the IRRC was to eliminate this excess:

> The General Assembly finds that it must provide a procedure for oversight and review of regulations adopted pursuant to this delegation of legislative power to curtail excessive regulation and to establish a system of accountability.... It is the intent of this act to establish a method for continuing and effective review, accountability and oversight. It is the further intent of this act to provide for primary review by a commission with sufficient authority, expertise, independence and time to perform that responsibility. It is the further intent of this act to provide ultimate review by the General Assembly

of those regulations which may be contrary to the public interest. This act is intended to provide a method of oversight and review of regulations issued by executive agencies to assist the Governor and the General Assembly in their supervisory and oversight functions....

Section 2 of the Act, 71 P.S. § 745.2.

The IRRC consists of five commissioners. One is appointed by the Governor, one by the President pro tempore of the Senate, one by the Speaker of the House of Representatives, one by the Minority Leader of the Senate and one by the Minority Leader of the House of Representatives. "No member of the General Assembly or any other officer or employee of State Government shall serve as a member of the [IRRC]." Section 4(a) of the Act, 71 P.S. § 745.4(a). The non-gubernatorial appointees serve overlapping terms of three years and the Governor's appointee serves at his pleasure. Section 4(b) of the Act, 71 P.S. § 745.4(b). The nongubernatorial candidates may not be removed from office during their term unless the Governor, with the approval of two-thirds of the Senate, finds clear and convincing evidence of misfeasance, malfeasance or neglect of duty. Section 4(e) of the Act, 71 P.S. § 745.4(e).

Under Sections 5(d) and (e) of the Act, 71 P.S. §§ 745.5(d) and (e), the IRRC is charged with determining whether a proposed regulation is in the public interest. In doing so, the IRRC must "make a determination that the proposed regulation is not contrary to the statutory authority of the agency and intention of the General Assembly in the enactment of the statute upon which the proposed regulation is based." 71 P.S. § 745.5(d). The IRRC must then consider eleven factors in ascertaining whether the proposed regulation is in the public interest. 71 P.S. § 745.5(e). If the IRRC determines that the proposed regulation may be contrary to the public interest, it must notify the agency promulgating that regulation of its finding and therein set forth its objections in reasonable detail.

The agency shall review the [IRRC's] finding and not later than two weeks following the notification ... shall

respond to the [IRRC] as to whether or not the proposed regulation will be withdrawn, revised or returned in its original form with added justification or documentation by the agency. If the [IRRC] does not notify the agency of any objection within 30 days of publication, in the case of proposed rulemaking, ... the agency may proceed to promulgate the regulation....

Section 6(a) of the Act, 71 P.S. § 745.6(a). If the IRRC disapproves the proposed regulation, it may issue an order barring publication. Sections 6(b) and 7(b) of the Act, 71 P.S. §§ 745.6(b) and 745.7(b).

Under Section 7(a), if the IRRC determines after reviewing an agency's response that the proposed regulation would be contrary to the public interest, it shall notify the Governor, who shall review the proposed regulation and the IRRC's findings within forty-five days. 71 P.S. § 745.7(a). Should the Governor and the agency determine that it is desirable to go forward with the proposed regulation absent revisions, the Governor submits a report to the General Assembly containing the findings of the IRRC, the response of the initiating agency and his own recommendation regarding the proposed regulation. Section 7(b) of the Act, 71 P.S. § 745.7(b). Once the Governor submits his report, the IRRC must, within fourteen days of that submission, either approve the regulation or transmit the proposed regulation to the General Assembly for consideration under the procedures set forth in the Reorganization Act of 1955. If the IRRC fails to transmit the proposed regulation to the General Assembly within fourteen days, the proposed regulation will be considered approved.

## STANDING

Several of the respondents submit that DER has no standing to bring suit against the Senate to challenge the constitutionality of statutes adopted by the General Assembly. We disagree.

The petition for review in this case was filed through the Office of General Counsel. Although the Governor has not filed a direct action in which he is named, the interest of the executive branch is adequately represented by DER, as an executive agency. *Kennedy v. Sampson,* 511 F.2d 430 (D.C.Cir.1974).

In *Kennedy,* United States Senator Edward Kennedy asserted standing to bring an action seeking a declaration that the President's veto of a statute under Article I, Section 7 of the United States Constitution violated the separation of powers doctrine. The Court upheld Kennedy's standing and rejected the executive branch's contention that only the United States Senate itself could bring suit challenging the President's veto. In doing so, the Court plainly stated that Kennedy's interest in the matter was derivative but was nonetheless substantial.

■ DER asserts that it, like Kennedy, has a derivative interest in this controversy sufficient to confer standing. We agree and hold that DER has standing to maintain this suit as the representative of the executive branch. *Leonard v. Thornburgh,* 78 Pa.Commonwealth Ct. 216, 467 A.2d 104 (1983) (Governor not a necessary party in lawsuit where executive interest is adequately represented by duly-appointed agency head).[5]

## MOOTNESS

The IRRC and the Senate submit that this action is moot due to the availability of alternative statutory remedies. It is argued that the alleged defects in the Act were cured by Act 1989–19, which now provides for bicameral review of regulations disapproved by the IRRC or the designated standing committees of the General Assembly and thereafter, presentment to the Governor. The IRRC and the Senate conclude that because the Act is no longer in effect

**5.** *See also Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 930, 103 S.Ct. 2764, 2773, 77 L.Ed.2d 317 (1983), where the United States Supreme Court noted that "INS presented the Executive's views on the constitutionality of the House action to the Court of Appeals."

and DER is free to submit the proposed regulations to the IRRC under Act 1989–19, DER's claim that the Act is unconstitutional is moot.

Section 6(b) of Act 1989–19 is cited to this Court. A close reading of that section indicates that the IRRC may not issue an order against a proposed regulation transmitted to it with a certificate of the Governor when that proposed regulation is necessary to meet an emergency which includes but is not limited to conditions which may threaten the public health, safety or welfare. Under such circumstances "the regulation can take effect immediately and remain in effect for up to 120 days but after that time may be suspended by the [IRRC] with a statement of disapproval unless it has been approved by the General Assembly under the procedures contained in Section 7(d)." If the IRRC disapproves the regulation after 120 days, the procedures for subsequent review set forth in Section 7 of Act 1989–19 must be followed.

DER submits that in order for this regulation to accomplish its purpose it must become effective immediately and remain effective throughout the summer of 1990. Section 6(b) of Act 1989–19 providing for temporary effectiveness of regulations for a period of 120 days pending ultimate review by the IRRC and the General Assembly would not provide the relief sought.

DER points out that the ultimate review procedure which must be undertaken to achieve promulgation of the regulations and the attendant time periods associated therewith are not eliminated by Section 6(b) of Act 1989–19. Review is simply postponed due to the need for emergency measures. In the face of the time constraints presented in resubmission of the proposed regulations under Act 1989–19, DER submits that the alternative statutory remedy is neither prudent nor viable.

We agree with DER's assertion and conclude that at most the alternative avenue of relief is speculative. When faced with a similar argument as to alternative remedies,

the United States Supreme Court in *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), reached the same conclusion. The words of the *Chadha* Court are instructive:

> It is urged that [intervening and newly enacted statutory remedies] constitute a prudential bar to our consideration of the constitutional question presented in this case. If we could perceive merit in this contention we might well seek to avoid deciding the constitutional claim advanced. But at most these other avenues of relief are speculative.... A person threatened with deportation cannot be denied the right to challenge the constitutional validity of the process which led to his status merely on the basis of speculation over the availability of other forms of relief.

*Id.* 462 U.S. at 936–37, 103 S.Ct. at 2776–77 (citations and footnotes omitted).

We here embrace the logic of the United States Supreme Court in *Chadha* as to the speculative nature of alternative statutory relief. Even assuming that emergency regulations were instituted under Act 1989–19, the temporary effectiveness of those regulations may not reach through the summer of 1990. A vital element of the RVP regulations is that they should become effective during the summer months when the ozone levels are higher. There is no assurance under the provisions of Act 1989–19 that these regulations, if resubmitted, would be effective throughout the summer of 1990. Accordingly, we shall proceed to address the constitutional issues presented.

## CONSTITUTIONALITY

It is axiomatic that legislative enactments enjoy a strong presumption of constitutionality. *Commonwealth v. Sutley*, 474 Pa. 256, 378 A.2d 780 (1977). "If the legislation has been duly enacted by the General Assembly and is within the scope of legislative power, the challengers bear the heavy burden of proving beyond a reasonable doubt that it

'clearly, palpably and plainly' violates the constitution." *Shapp v. Sloan,* 480 Pa. 449, 464, 391 A.2d 595, 602 (1978).

■   Where, as here, there is no allegation of irregularity in the enactment of the legislation, the challenger must prove that the legislation was clearly and palpably outside the scope of the General Assembly's legislative powers or in violation of some Constitutional prohibition.   For the reasons which follow, we hold that DER has met its burden of proving that the Act violates the separation of powers doctrine.

### SEPARATION OF POWERS

DER argues that the Act is unconstitutional because it enables the legislature to usurp the executive branch's function of administering laws.   *Commonwealth v. Sessoms,* 516 Pa. 365, 532 A.2d 775 (1987).   Although it is no simple task to determine the nature of "hybrid" governmental bodies such as the IRRC, *see, e.g., Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), and *Sessoms,* an examination of the IRRC's enabling statute, its functions and composition leads to the conclusion that it is a legislative agency.

■   In *Sessoms,* our Supreme Court considered the composition of the Pennsylvania Commission on Sentencing to be the most significant factor in determining its status.   *Id.* 516 Pa. at 375, 532 A.2d at 780.   In the case of the IRRC, although no member or employee of the General Assembly may serve on it, four of its five commissioners are appointed by the General Assembly.   That the Governor has power to initiate removal of the non-gubernatorial members, which power is extraordinary and limited to circumstances of malfeasance and misfeasance, does not transform the IRRC into an executive agency since the Governor may not remove those four commissioners without the consent of the Senate by two-thirds vote of its members.   Thus, what

limited removal power exists ultimately rests with the Senate.

In describing the authority of the Pennsylvania Commission on Sentencing, the *Sessoms* Court found that

> the legislative powers that the Commission shares are essentially those of investigation, classification and evaluation. Such tasks are commonly undertaken by special or standing committees and subcommittees composed entirely of members of the respective Houses of the General Assembly. We find no impediment, however, to the creation of a comparable 'legislative agency' that includes others as well, so long as the agency's powers do not exceed constitutional limitations.

516 Pa. at 376, 532 A.2d at 780.

Section 2 of the Act illustrates the legislative nature of the IRRC. The General Assembly, in this section declaring legislative intent, has found it must provide an oversight and review procedure. To that end, it has established the IRRC, committing to that body "primary review," while retaining its own power of "ultimate review." Oversight and review—much like the investigatory and evaluation functions of the sentencing commission in *Sessoms*—are legislative functions. Indeed, the General Assembly created the IRRC "to assist the Governor and the General Assembly in their oversight functions...." 71 P.S. § 745.2. The IRRC, a body created to assist the General Assembly and empowered to perform preliminary oversight functions, is an agent of the legislature.

It is beyond question in our modern system of government that overlapping responsibility and a degree of interdependence will occur among its three branches. Despite this necessary and salutary coordination among the three branches, we must be rigorous in guarding against the impermissible encroachment of one branch on the prerogatives and duties of another. Our inquiry, then, is to examine the IRRC's functions to determine if, as the petitioner contends, those functions interfere to such a degree as to

encroach on the executive's powers.  Again, *Sessoms* provides guidance.

In upholding its constitutionality, the *Sessoms* Court construed the statute providing for sentencing guidelines as not altering rights or legal duties but merely requiring the judiciary to *consider* the guidelines set forth thereunder. "Only in this limited way can the work-product of the Commission, a legislative agency, be given effect beyond the confines of the General Assembly and at the same time avoid invalidation on constitutional grounds."  516 Pa. at 377, 532 A.2d at 781.

Were a similar scheme employed with respect to the IRRC's functions, no constitutional infirmity would lie. However, the IRRC's powers exceed mere disapproval of a regulation.  The purported power vested in the IRRC by Sections 6(b) and 7(b) to bar publication of a final order adopting a rule promulgated by the executive transgresses the IRRC's legislative charter of oversight and review.

Although Section 2 of the Act contains a pointed disclaimer that the Act is not intended to create rights or benefits, it is readily apparent that IRRC's action in blocking the required publication of a regulation is an impediment to the executive's rule-making authority inherent in his duty to administer the laws.  This the legislature cannot do.

The IRRC's power to *disapprove* regulations should not, by virtue of its power to interrupt the rule-making process, be given the effect of law so as to alter the legal duty of the executive branch to implement laws.  Nothing less than legislation may suffice to override the rule-making power of the EQB or any other executive agency.  "Such a result can only be obtained by way of enactment of a law or administration of a law duly enacted."  *Sessoms*, 516 Pa. at 376, 532 A.2d at 781.  As the Supreme Court explicitly stated in *Bowsher v. Synar*, 478 U.S. 714, 733–34, 106 S.Ct. 3181, 3191–92, 92 L.Ed.2d 583 (1986), "[o]nce Congress makes its choice in enacting legislation, its participation ends.  Con-

gress can thereafter control the execution of its enactment only indirectly—by passing new legislation."

Moreover, the procedure found in Section 7(b) whereby the IRRC barred publication of the regulations upon the Senate's disapproval, poses serious questions of constitutionality under Article III, Section 9 of our Constitution, requiring bicameral action and gubernatorial presentment. A provision of the Immigration and Nationality Act, 8 U.S.C. § 1254(c)(2), was held to violate the corresponding article of our federal Constitution. *Chadha.* There, the Supreme Court made clear that Congress could not, by a resolution of *either* house alone, overrule an Attorney General's order suspending deportation proceedings. This result could be achieved *only by enacting legislation* in the manner mandated by the Constitution, that is, "passage by a majority of both Houses and presentment to the President." *Chadha,* 462 U.S. at 958, 103 S.Ct. at 2787.

For these reasons, we grant DER's motion for summary judgment and hold Sections 6(b) and 7(b) of the Act unconstitutional. We find those sections severable from the remainder of the Act and order the respondent Legislative Reference Bureau to forthwith publish the proposed regulatory amendments known as IRRC Regulation No. 7–172.

## ORDER

Petitioner Department of Environmental Resources motion for summary judgment in the above-captioned matter is granted. Respondents' cross-motions for summary judgment are hereby denied.

Respondent Legislative Reference Bureau shall forthwith take all necessary steps to direct publication of a final order adopting the regulations referred to herein as IRRC Regulation No. 7–172.

McGINLEY, J., did not participate in the decision in this case.

COLINS, Judge, dissenting.

I dissent. The IRRC is not an arm of the legislature, but instead, is an independent body properly positioned in the executive branch of our government. Its function is to review and approve or disapprove regulations proposed by sister executive agencies. The authority granted to it is simply a logical extension of the delegation of rule-making power to executive agencies by the General Assembly.

Our Supreme Court in *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987), considered the paramount factor in ascertaining the nature of an agency to be the agency's composition. The specific language of the Regulatory Review Act mandates that no member of the General Assembly or state government shall be appointed as a member of the IRRC. The power to initiate removal of any member lies solely with the Governor. A better guard against control over the members being weighted in favor of the General Assembly cannot seriously be argued. The majority states that the extraordinary power over removal possessed by the Governor does not transform the IRRC into an executive agency. Likewise, the fact that removal may only be effectuated by the consent of the Senate by a two-thirds vote of its members does not transform the IRRC into an arm of the legislature.

I would uphold the constitutionality of the Regulatory Review Act and deny the request to direct publication of the pertinent regulations.

PALLADINO, J., joins in this dissent.