614 A.2d 204

**COMMONWEALTH of Pennsylvania, DEPARTMENT of ENVIRONMENTAL RESOURCES**

v.

**The Honorable Robert JUBELIRER, President Pro Tempore of the Senate, et al.**

**The Honorable Robert P. Casey, Governor, Intervenor.**

Appeal of The Honorable Robert JUBELIRER, President Pro Tempore of the Senate, the Honorable D. Michael Fisher, Chairman of the Senate Environmental Resources and Energy Committee, the Senate of the Commonwealth of Pennsylvania, Gary R. Hoffman, Director of the Pennsylvania Code and the Pennsylvania Bulletin, and John Hartman, Director of the Legislative Reference Bureau and the Legislative Reference Bureau at No. 65.

Appeal of John R. McGINLEY, Jr., Chairman of the Independent Regulatory Review Commission, Commissioner Irvin G. Zimmerman, Commissioner Robert J. Harbison, III, Commissioner Mark Schwartz, Frank J. Ertz, Executive Director of the Independent Regulatory Review Commission, and the Independent Regulatory Review Commission at No. 66.

Supreme Court of Pennsylvania.

Argued Jan. 22, 1990.

Decided Sept. 16, 1992.

Ernest D. Preate, Jr., Atty. Gen., for Comm. of Pa. at No. 65.

S. David Fineman, Norman S. Berson, Harold K. Cohen, Philadelphia, W.C. Matthews, III, Coatesville, for Independent Regulatory Review Com'n at No. 65.

Henry G. Barr, Harrisburg, for amicus—Pa. Chamber of Business & Industry at No. 65.

Douglas R. Christian, Judith L. Rosenthal, Stanley L. Arabis, Philadelphia, for amicus—Sun Co., Inc. at No. 65.

Linda J. Shorey, John P. Krill, R. Timothy Weston, Harrisburg, for Hon. Robert Jubelirer, and Hon. Michael Fisher and the Senate of Pa. at No. 66.

474

James L. Walsh, Vincent C. DeLiberato, Robert W. Zech, Harrisburg, for Gary R. Hoffman, John Hartman and Legislative Reference Bureau at No. 66.

Keith Welks, Chief Counsel, Richard P. Mather, Asst. Counsel, Richard D. Spiegelman, Carl H. Shuman, Harrisburg, for Dept. of Env. Resources at Nos. 65 & 66.

Thomas W. Scott, Harrisburg, for P.S.E.A.

Allen Warshaw, Harrisburg, for Hospital Ass'n.

Linda J. Shorey, John P. Krill, R. Timothy Weston, Harrisburg, for Hon. Robert Jubelirer, Hon. D. Michael Fisher and The Senate of Pennsylvania.

James L. Walsh, Vincent C. DeLiberato, Robert W. Zech, Jr., Harrisburg, for Gary R. Hoffman, John Hartman and Legislative Reference Bureau.

S. David Fineman, Norman S. Berson, Philadelphia, Harold K. Cohen, W.C. Matthews, III, Coatesville, for appellants.

William Titelman, Pittsburgh, amicus for H. of R.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

OPINION

NIX, Chief Justice.

The Pennsylvania Department of Environmental Resources ("DER" or "Appellee"), on August 24, 1989, filed a Petition for Review, an Application for Special Relief, and a Motion for Expedited Consideration of the Application for Special Relief. In the Petition for Review, the DER asked the Commonwealth Court to declare the Regulatory Review Act, Act of June 25, 1985, P.L. 633, *as amended,* 71 P.S. §§ 745.1–745.15, unconstitutional and to direct the Legislative Reference Bureau ("LRB") to publish regulations adopted by the Environmental Quality Board ("EQB"), which the Independent Regulatory Review Commission ("IRRC") had disapproved pursuant to the Regulatory Review Act and which the Senate had rejected when proposed to the General Assembly by the Governor.

Appellants are all Commonwealth officials or bodies. They include the LRB and two of its officials, John Hartman and Gary Hoffman, and the IRRC and its five members. Appellants also include the Honorable Robert Jubelirer, President *pro tempore* of the Senate, Honorable D. Michael Fisher, Chairman of the Senate Environmental Resources and Energy Committee, and the Senate of Pennsylvania (hereinafter "Senate" or "Senate Appellants").

On September 7, 1989, the parties submitted to the Commonwealth Court a Stipulation of Counsel, with a Statement of Stipulated Facts and a Joint Application for Advancement of Argument and Argument *En Banc.* By order dated September 7, 1989, President Judge Crumlish granted the Joint Application and scheduled *en banc* oral argument. On September 8, 1989, President Judge Crumlish denied DER's Application for Special Relief. Oral argument on cross-motions for summary judgment was heard on October 4, 1989.

On December 7, 1989, the Commonwealth Court (per Crumlish, J.), in a 3–2 decision: (1) granted DER's motion for summary judgment; (2) denied all other motions for summary judgment; and (3) ordered the LRB to publish the regulations. *Commonwealth, Department of Environmental Resources v. Jubelirer,* 130 Pa.Commw. 124, 567 A.2d 741 (1989).

Appellants appealed from the Commonwealth Court's order on December 13, 1989, triggering the automatic supersedeas of Pa.R.A.P. 1736(b). The DER immediately filed an Application to Vacate Automatic Supersedeas with the Commonwealth Court. Argument on the DER's application was heard by President Judge Crumlish on December 14, 1989, and, later on that same day, President Judge Crumlish issued an order vacating the Automatic Supersedeas and directing the LRB to publish the regulations. Senate Appellants filed an emergency Application to Reinstate Automatic Supersedeas with this Court on December 14, 1989.

This writer, on December 16, 1989, reinstated the Automatic Supersedeas pending a hearing on Senate Appellants' application. A hearing on the application was held December 20, 1989. On December 22, 1989, this writer issued an order

vacating President Judge Crumlish's December 14, 1989 order and granting Senate Appellants' Application to Reinstate Automatic Supersedeas. —— Pa. ——, 614 A.2d 199 (1989). This order also listed the appeal for oral argument during the Supreme Court's January Session 1990 and ordered an expedited briefing schedule.

### History Relating to Regulatory Review Act

The Regulatory Review Act was enacted in 1982 by the General Assembly in order to "provide a procedure for oversight and review of regulations adopted [by administrative agencies] pursuant to [authority delegated by the General Assembly] to curtail excessive regulation and establish a system of accountability...." Section 2 of the Regulatory Review Act, 71 P.S. § 745.2. To perform this oversight function, the General Assembly created the Independent Regulatory Review Commission ("IRRC") and empowered it to approve or to disapprove proposed regulations after weighing eleven criteria to determine whether they were in the public interest. Sections 4, 5, 6 and 7 of the Regulatory Review Act, 71 P.S. §§ 745.4, 745.5, 745.6 and 745.7. The Regulatory Review Act also contained a mechanism whereby the Governor and the General Assembly could review the IRRC decisions. Section 7(b) and (c), 71 P.S. § 745.7(b) and (c).

On October 5, 1988, the EQB submitted to the IRRC and to the LRB proposed regulations to amend the DER's air quality regulations. The proposed regulations would impose a Reid Vapor Pressure ("RVP") volatility limitation of 9.0 psi on all gasoline sold or exchanged in the Commonwealth from May 1 through September 1 beginning in 1990. The proposed regulations were published in the Pennsylvania Bulletin on October 15, 1988.

The IRRC disapproved the proposed regulations on November 2, 1988 and issued an order barring their final publication. The DER requested, and the IRRC granted, an extension until December 1, 1988 for the DER to respond to the IRRC's initial disapproval of the proposed rules. On December 1, 1988, the DER resubmitted the proposed regulations, without

modification but with a letter purporting to provide additional justification. The IRRC again disapproved the rules and continued its order barring publication.

Pursuant to the oversight authority given the Governor in Section 7(b) of the Regulatory Review Act, 71 P.S. § 745.7(b), on January 23, 1989, Governor Casey sent a report to the General Assembly proposing that the regulations be adopted. On February 1, 1989, the IRRC declined to reconsider its disapproval and continued its order barring publication. The IRRC forwarded a report on the proposed regulations to the General Assembly for consideration, along with the Governor's proposal.

On March 22, 1989, the United States Environmental Protection Agency ("EPA") adopted RVP standards for all fifty states, ranging from 9.0 psi to 10.5 psi in particular states and parts of states. The standard adopted for Pennsylvania was 10.5 psi and became effective June 1, 1989. 54 Fed.Reg. 11883, 11884 (1989). Under Section 211 of the Clean Air Act, this federal standard pre-empts any state standard, unless the EPA finds such state standard necessary to achieve national ambient air quality standards and waives pre-emption. 42 U.S.C. § 7545(c)(4)(C) *as amended* Nov. 15, 1990, Pub.L. 101–549, Title II § 213(b).

Public hearings on the proposed DER regulations were held by the Senate Environmental Resources and Energy Committee and the House Conservation Committee. A report of the Committee Chairman was distributed to the full Senate. On April 12, 1989, the Senate rejected the Governor's proposal to approve the regulations.

The EQB nevertheless adopted the regulations on April 18, 1989. The DER then transmitted the regulations to the Office of General Counsel for review as required by Section 301 of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. § 732–301. The Office of General Counsel approved the regulations for legality and form. The office of General Counsel then forwarded the regulations to the Attorney General, whose review and approval is an additional requirement for all agency rulemaking

under Section 204(b) of the Commonwealth Attorneys Act, 71 P.S. § 732–204(b). The Attorney General disapproved the regulations after determining that one of the regulations exceeded the EQB's statutory authority.

On May 16, 1989, the EQB rescinded its April 18, 1989 adoption of the regulations, revised the rules by deleting the provision objected to by the Attorney General, and adopted the revised regulations as final. The revised regulations were submitted to the Attorney General, who approved them for form and legality on June 14, 1989. The Attorney General also advised Gary Hoffman, Director of the *Pennsylvania Code* and the *Pennsylvania Bulletin,* that his approval "should not be taken to mean that this Office is approving the publication of the regulation" and that he was "reserving judgment" on whether the action taken under the Regulatory Review Act precluded publication. On August 22, 1989, the General Counsel deposited the final regulations for filing and publication with the LRB. On August 24, 1989, Gary Hoffman informed the DER that the Senate's disapproval of the Governor's request for approval of the regulations constituted a permanent bar to publication, requiring him to decline the request to publish.

On June 30, 1989, the Regulatory Review Act of 1989 was enacted, as Act No. 1989–19. The Regulatory Review Act of 1989 amended Sections 6 and 7 of the Regulatory Review Act of 1982, 71 P.S. §§ 745.6, 745.7. The New Act provides the following procedures:

§ 745.6. **Procedures for Commission Consideration and agency review.**

(a) Whenever the commission shall find that a final-form regulation submitted to the commission pursuant to Section 5(b.4) [§ 745.5(b.4)] or that a regulation for which notice of proposed rulemaking is omitted pursuant to section 204 of the act of July 31, 1968 (P.L. 769, No. 240), referred to as the Commonwealth Documents Law, may be contrary to the public interest under the criteria set forth in section 5 [§ 745.5], the commission shall notify the Legislative Reference Bureau, the standing committees, members of the

public entitled to the notice set forth in section 5(b.5) [§ 745.5(b.5) ] and the agency promulgating such regulation of its finding. Such notification shall specify the regulatory review criteria which has not been met by the final-form regulation, as well as a description of the documents and testimony relied on by the commission in reaching its decision. The agency shall review the commission's finding and proceed pursuant to section 7(a) [§ 745.7(a) ]. If the commission does not notify the agency of any objection within 30 days of the date the commission received the information required in section 5(b.4) [§ 745.5(b.4) ], in the case of a final-form regulation, or within 30 days of receipt, in the case of omission of proposed rulemaking, the agency may proceed to promulgate the regulation as provided in the Commonwealth Documents Law.

(b) The commission may, when notifying an agency of its objections pursuant to subsection (a) or at any time following such notification but prior to publication of a final order adopting a regulation, issue an order barring the publication of a final order adopting a regulation pending subsequent review of the regulation in the manner provided in section 7 [§ 745.7]. The commission may not however issue an order against a proposed regulation to the extent that the Attorney General certifies that proposed regulation is required pursuant to the decree of any court or to implement the provisions of a statute of the United States or regulations issued thereunder by a Federal agency nor shall the commission issue an order against a proposed regulation when such regulation is transmitted with the certification of the governor that it is required to meet an emergency which shall include but not be limited to conditions which may threaten the public health, safety or welfare or cause a budget deficit or create need for supplemental or deficiency appropriations of greater than $1,000,000. In such case, the regulation can take effect immediately and may remain in effect for up to 120 days but after that time may be suspended by the commission with a statement of disapproval unless it has been approved by the General Assembly

under the procedures contained in section 7(d) [§ 745.7(d) ]. If the commission issues a statement of disapproval after 120 days, the emergency regulation must comply with section 7 [§ 745.7].

(c) Whenever a designated standing committee of the House of Representatives or the Senate has notified the commission of its disapproval and the commission approves the proposed regulation, the commission shall, within two business days, notify the said designated standing committee of such approval. The committee shall have 14 days from receipt of such notice to take action pursuant to section 7(d) [§ 745.7(d) ]. During this 14-day period the agency shall not be permitted to promulgate the regulation approved by the commission. If, at the expiration of the 14-day period, the designated standing committee fails to act on the regulation pursuant to section 7(d) [§ 745.7(d) ], the agency may proceed to promulgate the regulation as provided in the Commonwealth Documents law. If the commission is prevented from transmitting the notice required under this subsection because of recess or adjournment of either or both Houses of the General Assembly, the commission shall transmit the notice on the first subsequent session day.

§ 745.7. Procedures for subsequent review

(a) Within seven days of receipt of a notice of disapproval from the commission issued pursuant to section 6(a) [§ 745.-6(a) ], the agency shall notify the Governor, the designated standing committees of the House of Representatives and the Senate, and the commission of its intentions to proceed pursuant to subsection (b) or (c) or to withdraw the regulation. Failure to submit the notification required by this subsection shall constitute withdrawal of the regulation.

(b) If the agency determines that it is desirable to implement the final-form regulation without revisions or further modifications, the agency shall submit a report to the designated standing committee of each House of the General Assembly and the commission within 40 days of the agency's receipt of the commission's disapproval order. The agency's

report shall contain the final-form regulation, the findings of the commission, and the response and recommendations of the agency regarding the final-form regulation. If the agency is prevented from submitting its report because of recess or adjournment of either or both Houses of the General Assembly, the agency shall transmit its report on the first subsequent session day. Upon receipt of the agency's report, a designated standing committee may proceed pursuant to subsection (d). Failure of the agency to submit a report within the time period provided by this subsection or on the first subsequent session day shall constitute withdrawal of the final-form regulation.

(c) If the agency determines that it is desirable to implement the final-form regulation with further revisions or modifications, the agency shall submit a report to the designated standing committees of the House of Representatives and the Senate and the commission within 40 days of the agency's receipt of the commission's disapproval order. The agency's report shall contain the revised final-form regulation, the findings of the commission, and the response and recommendations of the agency regarding the revised final-form regulation. Failure of the agency to submit a report within the time period provided by this subsection shall constitute withdrawal of the final-form regulation. Upon receipt of the agency's report, the designated standing committees shall have ten days to notify the commission of their approval or disapproval of the agency's report. Failure of a designated standing committee to notify the commission of its disapproval within ten days shall constitute its approval of the agency's report. The commission shall have seven days or until its next regularly scheduled meeting, whichever is longer, from the completion of the designated standing committees' ten-day review period in which to approve the agency's report or to continue its bar upon final publication of the regulation and transmit notice of disapproval and the agency's report to the designated standing committees for consideration by the General Assembly pursuant to subsection (d). However, if the commission is

prevented from transmitting notice and the report to the General Assembly within the time period provided for in this subsection because of recess or adjournment, it may transmit notice and the report on the first subsequent session day. Failure of the commission to transmit the agency's report within the time period provided by this subsection or on the first subsequent session day shall constitute approval of the revised final-form regulation.

(d) Whenever the designated standing committees of both Houses of the General Assembly have received the report of an agency pursuant to subsection (b), or the notice and the agency's report pursuant to subsection (c), or the notice pursuant to section 6(c) [§ 745.6(c)], one or both of the designated standing committees may within 14 days report to the House of Representatives or Senate a concurrent resolution and notify the affected agency which shall be the official notice to the agency. During the 14–day period, the agency shall not be permitted to promulgate the regulation. If, at the expiration of the 14–day period, both of the designated standing committees fail to act on the agency's report, then the regulation is deemed approved and the agency may proceed to promulgate the regulation as provided in the act of July 31, 1968 (P.L. 769, No. 240), referred to as the Commonwealth Documents Law. A final order adopting the regulation shall not be published for 30 calendar days or ten legislative days, whichever is longer, from date of reporting the concurrent resolution. If both the House of Representatives and the Senate agree to the concurrent resolution within the allotted time period, which is 30 calendar days or ten legislative days, whichever is longer, from the date of reporting of the concurrent resolution, then the adoption of the concurrent resolution shall constitute a bar to publication until presentment to the Governor and final disposition of the regulation. The resolution shall be presented to the Governor in accordance with section 9 of Article III of the Constitution of Pennsylvania. If the Governor does not return the resolution to the General Assembly within ten calendar days after it is pre-

sented to him, it shall constitute approval of the resolution. If the Governor vetoes the action of the General Assembly, the General Assembly may, within 30 calendar days or ten legislative days, whichever is longer, override that veto by a two-thirds vote in each house; [sic] and that override shall constitute a permanent bar to publication. Failure of the House of Representatives and the Senate to act on the concurrent resolution or veto within the allotted time periods shall constitute approval of the final-form regulation. In addition, notice as to any final disposition of any concurrent resolution considered in accordance with this act shall be published in the Pennsylvania Bulletin. The General Assembly may, at its discretion, adopt a concurrent resolution disapproving the regulation to indicate the intent of the General Assembly, but permit publication of a final order adopting a regulation.[1]

71 P.S. §§ 745.6, 745.7.

Under the New Act, the EQB regulations in question were to

1. The amended sections, which the Commonwealth Court found unconstitutional, provided as follows:

§ 745.6

*     *     *     *     *     *

(b) The commission may, when notifying an agency of its objections pursuant to subjection (a) or at any time following such notification but prior to publication of a final order adopting a regulation, issue an order barring the publication of a final order adopting a regulation pending subsequent review of the regulation in the manner provided in section 7 [§ 745.7]. The commission may not however issue an order against a proposed regulation to the extent that the Attorney General certifies that proposed regulation is required pursuant to the decree of any court or to implement the provisions of a statute of the United States or regulations issued thereunder by a Federal agency nor shall the commission issue an order against a proposed regulation when such regulation is transmitted with the certification of the Governor that it is required to meet an emergency which shall include but not be limited to conditions which may cause a significant budget deficit or create need for supplemental or deficiency appropriations. In such case, the regulation can take effect for up to 120 days but after that time may be suspended by the commission unless it has been approved by the General Assembly under the procedures contained in section 7(b) [§ 745.7(b)].

be considered under the provisions of the predecessor statute.[2]

## Issue

The threshold issue for us to consider is whether this case is moot. For the reasons that follow we find that the case was moot when the Commonwealth Court heard oral argument and we therefore vacate the judgment of the Commonwealth Court and dismiss the appeal.

## Discussion

Appellants argue that the controversy was moot when the Commonwealth Court heard the case, because the New Act

§ 745.7

\* \* \* \* \* \*

(b) If the Governor and the agency determine that it is desirable to implement the proposed regulation without revisions, the Governor shall submit a report to the General Assembly containing the findings of the commission, the response of the initiating agency and his own recommendations regarding the regulation. At the time of the submission of the report by the Governor, the commission shall, within 14 days of submission of the report, either approve the regulation or transmit the proposed regulation to the General Assembly for consideration in accord with the procedures set forth in the act of April 7, 1955 (P.L. 23, No. 8), known as the 'Reorganization Act of 1955.' Failure of the commission to transmit a regulation to the General Assembly for consideration within 14 days of submission of the Governor's report shall constitute approval of the proposed regulation. However, if the commission is prevented from transmitting the regulation to the General Assembly within 14 days because of recess or adjournment, it may transmit the regulation on the first subsequent session day. Failure to submit a proposed regulation on the first subsequent session day shall constitute approval thereof. Pending the review of a regulation by the General Assembly, the commission may continue an order barring publication of a final order adopting a regulation, issue such an order if none was previously issued, or withdraw its order. If the General Assembly disapproves a regulation, the disapproval shall constitute a permanent order barring publication, or shall rescind a regulation for which a final order was published pending review of the regulation by the commission or the General Assembly. The General Assembly may at its discretion, however, disapprove a regulation to indicate the intent of the General Assembly, but permit publication of a final order adopting a regulation.

2. Section 15 of Act No. 1989–19, 1989 Pa.Legis. Service, No. 2 at 69–70 (Purdon), provides: "Regulations submitted prior to June 1, 1989, shall

had been enacted and the offending sections of the statute had been repealed.

Appellees respond to Appellants' argument by stating that Appellees are permanently barred from publishing the regulations, and that the New Act and any other statutory remedies that the Appellants cite are too speculative. In addition, they claim that the New Act is also unconstitutional.[3]

Appellees cite *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), as authority for this Court to follow to uphold the Commonwealth Court's determination that this case is not moot. In *Chadha*, the United States Supreme Court declared Section 244(c)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1254(c)(2), unconstitutional as a violation of the Separation of Powers under the United States Constitution. *Id.* at 959, 103 S.Ct. at 2788. The Act authorized one House of Congress, by resolution, to override the Attorney General's decision not to deport an alien who had remained in the United States beyond the limits of his visa. *Id.* at 925–26, 103 S.Ct. at 2770–71.

The Commonwealth Court adopted the reasoning of the United States Supreme Court in *Chadha* and applied it to the case at bar, stating:

'It is urged that [intervening and newly enacted statutory remedies] constitute a prudential bar to our consideration of the constitutional question presented in this case. If we could perceive merit in this contention we might well seek to avoid deciding the constitutional claim advanced. But at most these other avenues of relief are speculative.... A person threatened with deportation cannot be denied the right to challenge the constitutional validity of the process which led to his status merely on the basis of speculation over the availability of other forms of relief.'

be considered under the procedures contained in the Act of June 25, 1982 ... prior to the enactment of this Act."

**3.** We will not address any claims regarding the New Act because neither party has taken any action under it.

We here embrace the logic of the United States Supreme Court in *Chadha* as to the speculative nature of alternative statutory relief. Even assuming that emergency regulations were instituted under Act 1989–19, the temporary effectiveness of those regulations may not reach through the summer of 1990.

*DER v. Jubelirer*, 130 Pa.Commw. 124, 137, 567 A.2d 741, 747–48 (quoting *Chadha*, 462 U.S. at 936–37, 103 S.Ct. at 2776–77).

The Commonwealth Court made two errors in its reasoning. First, the lower court misapplied *Chadha* to the facts of this case. In *Chadha*, the Supreme Court of the United States was reviewing a statute which gave one House in Congress the power, by resolution, to overrule an Attorney General's decision not to deport an illegal alien. The alternative remedies available to Chadha allowed him to raise defenses at his *subsequent* deportation hearing. *Id.* at 936, 103 S.Ct. at 2776. However, the alternative remedies in no way effected the implementation of the one House veto overruling the Attorney General's decision not to deport him. Instead, the alternatives were available after the House exercised its power to veto the Attorney General's decision. *Id.* at 936, 103 S.Ct. at 2776. In the case at bar, the alternative means available have replaced the offending sections of the Regulatory Review Act. They are not *alternative* procedures but instead are now the *only* procedures that the parties may follow. Thus the concerns expressed by the United States Supreme Court in *Chadha* are not raised in this case.

The second mistake the Commonwealth Court made was to speculate on whether the Department of Environmental Resources would be able to have its regulations in effect by the summer of 1990 under the New Act. The Commonwealth Court based its decision on the mootness issue on what it saw as the importance of promulgating these regulations before the summer months. Any regulation which concerns an environmental issue will have a greater effect the sooner it is enacted, but that does not provide a basis to abandon jurisprudential tradition of declining to pass on the constitutionality of

repealed statutes. The Commonwealth Court may not make its *own* determination of the impact or importance of these regulations. *American Stores Co. v. Boardman*, 336 Pa. 36, 40, 6 A.2d 826, 828 (1939) ("the court has no power to review [a statute's] wisdom or expediency"). The policies underlying environmental legislation is a matter left entirely to the legislative branch, *c.f., Mt. Lebanon v. County Board of Elections of the County of Allegheny*, 470 Pa. 317, 320, 368 A.2d 648, 649 (1977) ("the courts may not encroach upon the legislature's powers"); the administration and execution of those policies, as properly and constitutionally established by the legislature, is within the exclusive discretion of the Executive Branch.

We are guided by the Supreme Court of the United States, which stated that "where, as here, a case implicates the fundamental relationship between the Branches, courts should be extremely careful not to issue unnecessary constitutional rulings." *American Foreign Service Ass'n. v. Garfinkel*, 490 U.S. 153, 161, 109 S.Ct. 1693, 1698, 104 L.Ed.2d 139 (1989). We would review this controversy only if the procedures under the old Act constituted a permanent bar to these regulations. However, because the New Act provides a new procedure for regulations which in the Governor's opinion address "conditions which may threaten the public health, safety, or welfare," 71 P.S. § 745.6(b), the permanent bar to publication cannot apply to these regulations if they are authorized under the New Act.[4] Therefore the appropriate course of action in this situation is for the DER to resubmit the regulations to the IRCC under the New Act. However, this was not done.

Appellees urge us, if we find that the controversy is moot, to declare the New Act unconstitutional. They argue, *inter alia*, that the bar to publication resulting from the resolution of the General Assembly goes into effect prior to presentment to the governor, in contravention to the language of Section 9 of

4. This language was added to the previous section 6(b) of the Regulatory Review Act, 71 P.S. § 745.6(b), which had not provided for temporary publication for any regulation addressing such an emergency.

Article III of the Pennsylvania Constitution.[5]

Appellants argue that the DER has never submitted its Regulations under the New Act or under any other available emergency procedures, and therefore the relief requested here is speculation of how the New Act would operate, because no effort was made to submit the regulations under the New Act. We agree with the Appellant.

We will not review the New Act because none of the parties has undertaken any of its procedures. Despite the fact that the new statute provides an exception for those regulations which are published in order to meet an emergency "which may threaten the public health, safety or welfare," 71 P.S. § 745.6(b), (a point which Appellees stress throughout their argument), the regulations were never submitted under the New Act, and therefore any comment on how it may or may not operate is entirely anticipatory. As a result, any opinion on the operation and constitutionality of the New Act would be advisory in nature. This Court will not break now with its long tradition of refusing to give advisory opinions. *See Okkerse v. Howe,* 521 Pa. 509, 556 A.2d 827 (1989); *Pennsylvania Public Utility Commission v. Allegheny County,* 415 Pa. 313, 203 A.2d 544 (1964); *Schoenbrun v. Nettrour,* 360 Pa. 474, 61 A.2d 868 (1948).

The decision of the Commonwealth Court is vacated, and the appeal is dismissed.

McDERMOTT, J., did not participate in the decision of this case.

LARSEN, J., files a concurring opinion.

LARSEN, Justice, concurring.

I agree that this case is moot.

---

5. The New Act requires both Houses of the General Assembly to pass a resolution barring publication of the regulation and allows the Governor to veto that resolution. 71 P.S. § 745.7(d). This subsection replaced Section 7(b) of the Regulatory Review Act of 1982, 71 P.S. § 745.7(b), which did not include any provision for presenting the resolution to the Governor for his veto. It is this previous section that the Commonwealth Court held unconstitutional.